## No. 195

### OHIO MATCH CO. v. ELM GROVE MIN. CO.

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 7106. Decided Jan. 24, 1927

297. CONTRACTS—Where two parties, one of which is indebted to a third, agree that one will pay off the indebtedness of the other evidenced by notes secured by a mortgage, this contract is for the benefit of the third party and said third party must comply with the provisions of the contract in regard to payments to be made by it although it is not a signatory to the contract.

#### First Publication of this Opinion

LEVINE, P. J.

The Elm Grove Mining Co., brought an action against the Ohio Match Co., alleging four causes of action, but the decision of the court, based upon the third cause of action, is the only matter pertinent to the consideration of the Court of Appeals on error proceedings.

It seems that the Oco Coal Co. furnished coal to the Match Co. and was indebted to it in the sum of $550,000. On Aug. 2, 1920, the Oco Co. and the Mining Co. agreed that the latter purchase the interest of the Oco Coal Co. for $600,000, $50,000 of which was payable in cash; and the balance of $550,000, evidenced by notes secured by mortgage on the mine, which notes ran directly to the Match Co.

It was agreed that the indebtedness to the Match Co. was to be paid by shipments of coal at $3.50 per ton, one half of the price to be in cash and the other half to be applied to the notes. The agreement between the Oco Co. an dthe Mining Co. provided "that if miners' scale of prices for mining coal in Ohio shall on April 1, 1922 or thereafter, be increased or decreased, then - - - the price of coal delivered after the date of such change in miners' scale of prices shall be increased or decreased, at the rate of two cents per ton for each one percent of increase or decrease in the miners' scale."

In the middle of August, 1920, a wage increase went into effect and the Mining Co. contended that it was entitled to two cents per ton for each one percent of the increase in the wage scale from Aug. 16, 1920 through the balance of the life of the contract. The court below construed the increase to take effect from April 1, 1922, only, and gave judgment accordingly. The Court of Appeals held:

1. Although the Ohio Match Co. does not appear as a signatory to the agreement, it accepted the mortgage and notes, caused the mortgage to be recorded, gave orders for coal and otherwise complied with the provision in regard to the price and payments.

2. The one question raised upon the record is as to the right of the Mining Co. to sue the Match Co. and to recover judgment against it. It is not necessary to hold that the Oco Coal Co. acted as agent of the Match Co. when it entered the agreement with the Mining Co. to entitle the Mining Co. to recover upon the third cause of action.

3. Assuming that the Match Co. was not a party to the contract, it was made for the benefit of the Match Co., and when it accepted the shipments of coal under the agreement made for its benefit, it obligated itself to pay the price stipulated in said agreement.

4. The provision in the contract upon which the Mining Co. bases its claim, regulates the price to be paid per ton for all coal delivered.

5. The Match Co. by accepting the benefits of the contract also accepted the burdens, and the acceptance by it of the coal delivered to it, raises an implied obligation on part of the Match Co. to comply with the burdens, namely, payment in accordance with the provisions of the contract made for its benefit.

6. By express provision of the contract, the increase or decrease did not become effective until Apr. 1, 1922.

Judgment therefore affirmed.

(Sullivan, J., concurs.)

Attorneys—Walter D. Meals for Match Co.; C. F. Taplin for Mining Co.; all of Cleveland.